UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Misc. No. 10-71 (DWF/FLN)

|  |  |  |
|---|---|---|
| IN RE SEARCH AND | ) | STIPULATION |
| SEIZURE WARRANT | ) | |
|  | ) | |

## I.  INTRODUCTION

This Stipulation is hereby agreed to and entered into by the United States of America ("United States") and the following entities:  Inter-Mark Corporation, a Nevada corporation; Virtual Payments Systems LLC, a Wisconsin limited liability company; V-Media Marketing LLC, a Minnesota limited liability company; Cash Cards International LLC, a Minnesota limited liability company; SMR Investments #1 LLC, a Minnesota limited liability company; iNetglobal LLC, a Minnesota limited liability company; and Inter-Mark LLC, a Minnesota limited liability company (hereinafter referred to as "Inter-Mark").

## II.  BACKGROUND

### A.    Issuance of Search and Seizure Warrants

On February 19, 2010, this Court issued search warrants for several business locations related to Inter-Mark.   The requested search warrants related to business properties located in Minneapolis, Minnesota, including:  Suite 145, 250 Second Avenue South; Suite 106A, 250 Second Avenue South; Suite 104, 77 Thirteenth Avenue Northeast; Suite 210, 77 Thirteenth Avenue Northeast; and Suite 10, 411 Washington

Avenue North.   (Docket Nos. 1-16.) All of the search warrants were conducted of business locations.

In conjunction with the execution of the search warrants, this Court on February 19, February 24, and March 2, 2010 issued warrants for the seizure of certain property in this matter.  (Docket Nos. 17-44.)  The warrants issued by the Court seized the following property and assets:

a.   Funds in the amount of $12,659,562.69 seized on or about February 19, 2010, from Wells Fargo Bank account number #xxxx9014, held in the name of Inter-Mark Corporation;

b.   Funds in the amount of $1,634,964.91 seized on or about February 19, 2010, from Wells Fargo Bank account number #xxxx8181, held in the name of Inter-Mark Corporation;

c.   Funds in the amount of $2,810,665.69 seized on or about February 19, 2010, from Wells Fargo Bank account number #xxxx0277, held in the name of Inter-Mark Corporation;

d.   Funds in the amount of $309,403.12 seized on or about February 19, 2010, from Wells Fargo Bank account number #xxxx3024, held in the name of Inter-Mark Corporation;

e.   Funds in the amount of $191,424.53 seized on or about February 19, 2010, from Wells Fargo Bank account number #xxxx3420, held in the name of Inter-Mark Corporation;

f.   Funds in the amount of $3,269,141.71 seized on or about February 19, 2010, from Bremer Bank account number #xxx0036, held in the name of Virtual Payment Systems LLC;

g.   Funds in the amount of $1,262,623.31 seized on or about February 19, 2010, from Bremer Bank account number #xxxx0044, held in the name of V-Media Marketing LLC;

h.      Funds in the amount of $621,046.70 seized on or about February 19, 2010, from Bremer Bank account number #xxxx0095, held in the name of Cash Cards International LLC;

i.      Funds in the amount of $1,965,962.93 seized on or about February 19, 2010, from Bremer Bank account number #xxxx0087, held in the name of Virtual Payment Systems;

j.      Funds in the amount of $1,100,000 seized on or about February 24, 2010, from Guaranty Bank account number #xxxx0314, held in the name of SMR Investments #1 LLC;

k.      Funds in the amount of $100,138.56 seized on or about February 24, 2010, from Guaranty Bank account number #xxxx9243, held in the name of Steven Renner;

l.      Funds in the amount of $51,346.19 seized on or about February 24, 2010, from Guaranty Bank account number #xxxx8891, held in the name of Steven Renner;[1] and

m.      Funds in the amount of $75,687.05 seized on or about March 2, 2010, from Wells Fargo Bank account number #xxxx0277, held in the name of Inter-Mark Corporation;

(Docket Nos. 17-44.)

Pursuant to the seizure warrants issued, the United States seized a total of $26,051,967.39 from the above-listed accounts (hereinafter referred to as the "Seized Funds").  (Docket Nos. 17-44.)

**B.      Affidavit of Secret Service Agent Wespetal**

In applying for the seizure warrants on February 19, February 24, and March 2,

---

[1] A seizure warrant was also obtained on February 24, 2010, for TCF Bank account #xxxx6891 held in the name of Steven Renner.  This account had a zero balance, and no funds were seized from the account.   (Docket Nos. 17-44.)

2010, the United States presented to this Court the affidavit of Secret Service Special Agent Katherine Wespetal ("Wespetal Affidavit").  (Docket Nos. 2, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43.)

The Wespetal Affidavit alleged that in late 2007 and early 2008, federal authorities became concerned that Inter-Mark was operating as a pyramid scheme and making misrepresentations regarding its business.   These misrepresentations, the Wespetal Affidavit alleged, included:

-        That Inter-Mark had been in business for over ten years, and had made $100 million dollars;

-        That Steven Renner had made over $65 million in various internet activities;

-        That V-Local (a business-to-business directory that Inter-Mark was launching) had over 3.5 million businesses within it.

The Wespetal Affidavit also alleged that Inter-Mark was presented to the public as a source for helping small businesses with their internet needs, but that many members of Inter-Mark became Inter-Mark members even though they had no small business and joined Inter-Mark purely to reap the financial benefits of recruiting other people to become Inter-Mark members themselves.   The financial importance to Inter-Mark members of recruiting additional members was not, the Wespetal Affidavit alleged, adequately disclosed to prospective Inter-Mark members.

4

The affidavit presented to this Court also alleged that government investigators had heard from numerous Inter-Mark members who had experienced difficulty getting their money returned to them by Inter-Mark.

The investigation the United States was conducting of Inter-Mark became public on February 23, 2010.  On that date, the United States became concerned that Inter-Mark was about to collapse financially and take its members money with it. Acting pursuant to Court-ordered seizure warrants, the United States ultimately seized $26,051,967.39 from the accounts described above.

**C.     Rule 41(g) Motion and Interim Settlement Agreement**

Following the seizure of the Seized Funds by the United States, Inter-Mark brought an action pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the return of the Seized Funds.  Inter-Mark alleged in its Rule 41(g) motion that the allegations in the Wespetal Affidavit were either intentionally or recklessly false. (Docket Nos. 46, 47, 48, 53-55.)  The United States opposed the motion for the return of the Seized Funds.  (Docket Nos. 49, 50.)

On April 12, 2010, this Court held a hearing on the motion to return the Seized Funds, and the parties thereafter were ordered to attend a settlement conference before a magistrate judge, which took place on May 6, 2010.  (Docket Nos. 65, 72.)  An additional settlement conference was held on May 18, 2010.

On June 15, 2010, the parties entered into and filed an Interim Agreement regarding the Seized Funds.  (Docket No. 107.)  Pursuant to the terms of the Interim

Agreement, the United States released funds for past due salaries, payroll taxes, health insurance premiums, and income tax payments, and since then has returned to Inter-Mark approximately $200,000 each month. (Docket No. 107.)  Under the terms of the Interim Agreement, the parties also agreed that the Court would appoint an attorney to disburse the funds each month to Inter-Mark as set forth in the Court's Appointment Order. (Docket No. 108.)  Attorney R.J. Zayed was so appointed. (Id.)

**D.     Changes at Inter-Mark Following the Seizure of Funds by the United States**

Inter-Mark alleges that, since the seizure of the Seized Funds by the United States, it has made substantial changes to its organizational structure and operations.  It states the following:

In December 2009 Robert B. Kinsella ("Kinsella") began discussions with Inter-Mark to assume a leadership role in the company.  After several operational meetings, Kinsella agreed to assume a Board of Directors position in January 2010.  Prior to January 15, 2010, Steve Renner ("Renner") was the sole member of the Board of the Directors and sole shareholder of Inter-Mark.  On January 15, 2010, Kinsella was elected Chairman of the Board of Inter-Mark, and two new board members were elected:  Annie Zhang ("Zhang") and Judy Zellmer ("Zellmer").  At that time Renner resigned as a director but continued as Secretary of the company.

On February 23, 2010, the United States executed the search warrants at the offices of Inter-Mark and seized the Seized Funds.  On February 24, 2010, the Inter-Mark Board of Directors put a hold on new financial transactions and began to oversee a substantial

audit of all facets of Inter-Mark's operations.  The following steps were then taken over the next six weeks:

1.  Compensation Plan Review

   In May 2010, the Inter-Mark Board rehired the firm of Reese and Grimes, which has a national reputation as a consultant to globally recognized multi-level marketing businesses, to review the compensation plan for its multi-level marketing business to ensure that the compensation plan offered to Inter-Mark members, customers, and sales associates was proper.

2.  Financial Statement Review

   The Inter-Mark Board asked the accounting firm of Lethert, Skwira, Schultz & Company, LLP to review Inter-Mark's financial statements, tax returns, internal processes, and control procedures.  The accounting firm was engaged to oversee Inter-Mark's financial reporting.  The firm recommended that Inter-Mark expand its reporting system and install internal controls.  Upon the recommendation of the accounting firm, Inter-Mark hired a new CFO.  The accounting firm prepared a report that concluded that approximately $19 million of the Seized Funds represented commissions and fees earned by over 70,000 of the members of Inter-Mark.

3.  Compliance Review

   The Inter-Mark Board hired White Hat Solutions to review Inter-Mark's multi-level marketing compliance protocol and to advise the Board on processes for

7

future multi-level compliance directives.  The Inter-Mark Board implemented all of the recommendations of White Hat Solutions.

4.    Product Value Review

The Inter-Mark Board hired Mike Santi and IP:House Application and Data Hosting to evaluate and give an opinion on the value of the products Inter-Mark was selling, and Inter-Mark's capability to provide the products and services from a hardware/system point of view.  That review confirmed the value of products being marketed by sales consultants of Inter-Mark.

5.    Further Separation of Steve Renner from Inter-Mark

By agreement of the Inter-Mark Board and Renner, Renner resigned as an officer of the corporation effective June 1, 2010.  Renner further relinquished any and all employment and management responsibilities with Inter-Mark and all of its affiliates.  On June 1, 2010, Zellmer, a significant other of Renner, resigned as a director of the company.  Since June 1, 2010, neither Renner nor Zellmer has received compensation from Inter-Mark.

In July 2010, Inter-Mark shared the findings of several of these reports and audits with the United States.  On July 26, 2010, Inter-Mark began to accept business transactions.

Since the re-opening of Inter-Mark in July 2010, Kinsella and Zhang traveled to Toronto, Vancouver, and Hong Kong to meet with key leaders of Inter-Mark.  From those meetings, the Board of Directors received feedback from members on

8

improvements the members sought.  Specifically, the members wanted better trained and more responsive customer service representatives.  Since that time the company has developed training programs to ensure customer service representatives were prepared to properly respond to customer questions and concerns.

**E.     Negotiations with the United States Following Corporate Changes**

In 2011, Inter-Mark began to meet with the United States to detail the changes made by the Inter-Mark Board of Directors.  Thereafter, the parties entered into negotiations regarding the status of the Seized Funds.  Inter-Mark contends that amounts are due to its members for commissions and fees.  The United States recognizes the interest of returning funds to Inter-Mark members whose claim to the funds can be documented and verified. Proposals for the return of the Seized Funds for the sole distribution to Inter-Mark members were exchanged.  The Court-appointed attorney, R.J. Zayed, was invited by the parties to participate in the discussions regarding the process by which payments to Inter-Mark members would be reviewed and verified.  Following several meetings and negotiations, the parties agreed to enter into a Stipulation regarding the disposition of the Seized Funds and present it to the Court.

### III. STIPULATION

The Parties enter into this Stipulation and agree to the following provisions.

**A.     Approval by the Court**

The parties agree to present this Stipulation and a Proposed Order to the Court for its approval.

9

**B.      Distribution of Funds to Inter-Mark Members**

The purpose of this Stipulation and the Proposed Order is to establish the framework under which verified amounts due and owing to individual members of Inter-Mark shall be distributed to such members by a Temporary Administrator of Seized Funds ("Administrator") duly appointed by the Court.

Following approval by the Court of the Stipulation and issuance of its Order, the United States agrees to transfer the remaining balance of the Seized Funds to the Administrator for the purpose of distributing the funds to the members determined to have earned them under the plan established by the Administrator.  The transfer by the United States to the Administrator shall be completed within 45 days of issuance of the Court's Order, unless for good cause shown an extension is needed. Release of any funds shall be subject to any debt owed to the United States, any agency of the United States, or any other debt which the United States is authorized to collect.

**C.      Court Appointment of Administrator**

The parties agree to propose an Order of this Court for the continued appointment of attorney R.J. Zayed as the Administrator to receive the Seized Funds from the United States.  The parties agree that the Administrator shall solely be the agent of this Court in acting as Administrator, and that the Administrator shall be accountable directly to this Court.

The parties agree that a Proposed Order detailing the specific duties of the Administrator will be jointly filed by the parties upon the filing of this Stipulation.  The

10

duties of the Administrator shall include the following:

1.      The Administrator shall assume full control of the Seized Funds once they have been transferred by the United States to the Administrator pursuant to the Court's Order.

2.      Upon verification by the Administrator, as set forth in the process detailed in paragraphs 4 through 9 below, the Administrator shall disburse from the Seized Funds to members of Inter-Mark the commissions and fees they earned as of February 23, 2010, as detailed below.

3.      The Administrator shall conserve, hold, and manage the Seized Funds transferred by the United States as part of the Court's Order, and shall perform all acts reasonably necessary or advisable to preserve the value of the Seized Funds until they are validly distributed to the members of Inter-Mark.

4.      The Administrator shall have the authority, with Court approval, to choose, engage, and employ attorneys, paralegals, clerks, secretaries, accountants, appraisers, independent contractors, technical specialists, and any other personnel as the Administrator deems reasonably advisable or necessary in the performance of his duties and responsibilities to distribute the funds to the members of Inter-Mark (hereinafter referred to as "Retained Personnel").

5.      Inter-Mark shall from time to time provide the Administrator with a list of members for whom Inter-Mark has verified the names, addresses, government

identification documents, IRS tax forms, and the amount of commissions and fees due and owing to the members as of February 23, 2010.

6.      Prior to authorizing the payments from the Seized Funds of the amount of commission and fees due and owing to the individual members of Inter-Mark, the Administrator shall verify, by means of audit, statistical sampling, or other reasonable methodologies, the member information provided by Inter-Mark.

7.      The Administrator shall have the power to request and review business records, including computers and electronically stored data, of Inter-Mark in order to verify member information provided by Inter-Mark.

8.      If the Administrator is satisfied, in his sole discretion, that the identity of the Inter-Mark member is correct, that the amount due and owing to the member is correct, and that the name, address, government identification documents, and IRS tax forms of that member are proper, the Administrator shall wire transfer from the Seized Funds to that member's "e-wallet" account with International Payout Systems the amount due and owing to that member.

9.      The Administrator shall maintain accurate records of all receipts and approvals for distributions and expenditures that the Administrator makes from the Seized Funds.

10.     The Administrator shall not be responsible for resolving any disputes between Inter-Mark and any member as to the amount that is due and owing to the member.   The Administrator, subject to verification and validation, shall accept the

amount due and owing to the member that Inter-Mark provided to the Administrator. The Administrator shall not be responsible for resolving any disputes between International Payout Systems "e-wallet" and any member concerning payment or the amount of payment.

11.    The Administrator shall continue to provide monthly stipends of operating capital to Inter-Mark, as detailed in the Court's Appointment Order.  (Docket No. 108.) The monthly stipends shall cease once a final report is filed with the Court by the Administrator and the remaining, excess funds are returned to Inter-Mark pursuant to this Stipulation and the Court's Order.

**D.     Compensation to Administrator**

The Administrator and Retained Personnel are entitled to reasonable compensation for the performance of duties pursuant to the Court's Order and for the cost of actual out-of-pocket expenses incurred by them.  Such compensation shall be approved by this Court and shall be paid from the Seized Funds.

**E.      Administrator Bond**

The Administrator shall not be required to post bond or give any undertaking of any type with his fiduciary duties and obligations in this matter unless ordered by this Court.

**F.     Administrator Liability**

The Administrator and Retained Personnel are entitled to rely on all outstanding rules of law and Court Orders and shall not be liable to anyone for their own good faith

compliance with any order, rule, law, judgment, or decree.  In no event shall the Administrator or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Administrator or Retained Personnel, nor shall the Administrator or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

**G.     Cooperation of Inter-Mark with Administrator**

Inter-Mark agrees that it shall fully cooperate with the Administrator in implementing the Court's Orders.  Inter-Mark shall make any records available to the Administrator so that the Administrator can duly perform the duties and obligations under any Orders of the Court.

**H.     Notification to Members of Distribution of Funds**

Prior to a Court hearing on the approval of this Stipulation and Order, Inter-Mark shall post on its official company website a notice of the date of the Court hearing and information regarding the distribution process outlined in this Stipulation and the Proposed Order.

**I.     Court Hearing Prior to Distribution of Funds**

The parties agree to file this Stipulation and the Proposed Order with the Court and schedule a Court hearing on the approval of the Proposed Order.

**J.**     **Excess Funds in the Seized Fund**

If there are excess funds in the Seized Funds following: (1) the payment of all commissions and fees due and owing to the members of Inter-Mark as of February 23, 2010; (2) the payment of all compensation and out-of-pocket expenses of the Administrator and the Retained Personnel; and (3) the interim distributions to Inter-Mark under the Interim Agreement of June 15, 2010, such excess funds shall be returned to Inter-Mark by the Administrator following a full and complete accounting and the filing of a final report by the Administrator.   Inter-Mark assumes full responsibility for allocating any funds that are returned among the various companies associated with Inter-Mark from whom the funds were seized.

**K.**     **Consumer Protection Provisions**

Following the issuance of the Court's Order, Inter-Mark agrees that its officials and sales representatives shall make no misrepresentations of material fact in any written documents that describe the company or its operations to potential members. Inter-Mark also agrees that its officials and sales representatives shall make no misrepresentations of material fact in any emails or oral solicitations to potential members.

**L.**     **Grievance Procedures for Member Complaints**

Inter-Mark agrees to establish a procedure by which complaints or grievances from members will be reviewed, responded to, and resolved within a reasonable period by Inter-Mark officials.   The complaint and grievance procedures shall be published on the official Inter-Mark website and made readily available to all members.

**M.    Resolution of District of Minnesota Court File No. 10-CV-00808 (PAM/FLN)**

The parties agree that District of Minnesota Court File No. 10-CV-00808, will be dismissed without prejudice.   The parties agree to execute a separate stipulation of dismissal to be filed in that action.   Each party shall bear their own costs and attorney fees associated with the commencement of that action.

**N.    Release of Claims**

1.    In consideration of the performance of all obligations of Inter-Mark as set forth in this Stipulation, the United States agrees to fully and finally release any claims it may have that the Seized Funds are subject to forfeiture to the United States.   This release relates only to the Rule 41g dispute regarding the Seized Funds and does not include in any way a release of any federal tax liability of Inter-Mark or of any future administrative, civil, or criminal action against Inter-Mark by the United States or any of its agencies or independent regulatory commissions.

2.    Inter-Mark fully and finally releases the United States, its agencies, employees, servants, and agents from any claims which Inter-Mark has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, relating to the United States' seizure of funds in this case.   In addition, Inter-Mark agrees to hold the United States harmless regarding any claims made against it for distributions from the Seized Funds as provided for in this agreement.   The United States shall not be responsible for resolving any disputes between Inter-Mark and any member as to the amount that is due and owing to the member.   In

16

addition, Inter-Mark agrees that the United States shall not be responsible for resolving any disputes between International Payout Systems "e-wallet" and any member concerning payment or the amount.

3.      Nothing in this Stipulation precludes Inter-Mark or its officers, shareholders, or agents, should they become defendants in a criminal proceeding, from raising any statutory or constitutional claim that may be available to them.

**O.      Exhibit Detailing Amount of Seized Funds**

The parties agree that the balance in the Seized Funds is as detailed in the Exhibit to this Stipulation and that no other monies shall be a part of this Stipulation or distributed to members or Inter-Mark.

**P.      Integration**

This Stipulation sets forth the entire agreement among the Parties and fully supersedes any and all prior or contemporaneous agreements or understandings among the Parties pertaining to the subject matter hereof, except for the June 15, 2010 Interim Agreement regarding the Seized Funds (Docket No. 107) and the Court's Order implementing the Interim Agreement (Docket No. 108), which shall apply as detailed in paragraph C.11 of this Stipulation.

**Q.      Drafting of Agreement**

Each of the Parties was involved in memorializing the terms of this Stipulation. As such, in choosing among the reasonable meanings of a promise, term, or agreement

herein, that meaning shall be interpreted as though each of the Parties equally supplied the words and terms to this Stipulation.

**R.     Proposed Order of the Court**

It is hereby stipulated by the parties, by and through their respective attorneys, that the attached Order be entered by the Court.


Dated:          6/17/11                              B. TODD JONES

                                                     United States Attorney

                                                     s/ Gregory G. Brooker

                                                     BY: GREGORY G. BROOKER
                                                     Assistant United States Attorney
                                                     Attorney I.D. No. 0166066
                                                     600 United States Courthouse
                                                     300 South Fourth Street
                                                     Minneapolis, MN 55415
                                                     (612) 664-5600
                                                     greg.brooker@usdoj.gov

                                                     ATTORNEYS FOR THE UNITED
                                                     STATES OF AMERICA

Dated:        6/17/11                              PETER B. WOLD, P.A.

                                                   s/  Peter B. Wold

                                                   By:  Peter B. Wold
                                                   Attorney I.D. No. 0118382
                                                   247 Third Avenue
                                                   Minneapolis, MN  55415
                                                   (612) 341-2525
                                                   pwold@wold-law.com

                                                   ATTORNEYS FOR INTER-MARK
                                                   CORPORATION, VIRTUAL PAYMENTS
                                                   SYSTEMS LLC, V-MEDIA MARKETING
                                                   LLC, CASH CARDS INTERNATIONAL
                                                   LLC, SMR INVESTMENTS #1 LLC,
                                                   INETGLOBAL LLC, AND INTER-MARK
                                                   LLC